UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JASON SHEPPARD and DONALD JOHNSON, JR., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Cause No. 1:21-CV-185-HAB ) |
| DEKALB COUNTY SHERIFF, | ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiffs, former detainees at the DeKalb County Jail, sued the DeKalb County Sheriff alleging violations of their constitutional rights. They allege that, while on suicide watch, they were exposed to unsanitary conditions in the jail's "rubber room." Defendant has moved for summary judgment (ECF No. 33) and that motion is now fully briefed (ECF Nos. 34, 49, 53).

**I.     Factual Background[1]**

In May 2019, Plaintiff Jason Sheppard ("Sheppard") told staff at the DeKalb County Jail that he was thinking of harming himself. Under jail policy, Sheppard was placed on suicide watch in a "padded cell" or "rubber room" in the booking area of the jail. The rubber room is sparse: it is essentially a 10' x 10' room, lined with rubber, with a grated drain in the middle of the room for inmates to use as a toilet. Inmates in the rubber room cannot access a toilet (unless released from the rubber room and accompanied by jail staff), toilet paper, eating utensils, or anything else they

---

[1] Defendant stresses that Plaintiffs violated the current local rule on summary judgment, particularly as it relates to the requirement that the non-moving party present a verbatim restatement of the movant's statement of material facts. *See* N.D. Ind. L.R. 56-1(b). Defendant even asks the Court to disregard all Plaintiffs' designated facts as a sanction. While the Court encourages and expects parties to comply with the local rules, it also prefers to resolve cases on their merits. So the Court will reject the invitation to disregard Plaintiffs' facts.

might use to harm themselves. Rubber room occupants cannot wear their normal jail jumpsuit but are instead placed in a "suicide smock."

Although the rubber room was clean when Sheppard entered, it did not remain that way for long. Sheppard suffered from a medical condition that caused him to bleed when he defecated. Despite asking to use a restroom connected to the rubber room, Sheppard was, more than once, forced to use the grated drain as a toilet. With no toilet paper, both feces and blood ran down Sheppard's legs after using the drain. Sheppard then tracked this blood and feces throughout the rubber room.

Sheppard, like all inmates on suicide watch, was to be given one hour outside the rubber room every day. According to Sheppard, this did not occur. Sheppard notes that jail logs show he went from late on May 12 to early on May 15 without access to a restroom. When he was allowed to leave the room, however, he could shower and had access to a full bathroom.

Plaintiff Donald Johnson, Jr. ("Johnson"), joined Sheppard in the rubber room three days into Sheppard's stay. When Johnson was placed in the rubber room, he found blood and feces on the floor, wall, and floorboard of the rubber room. Johnson also found the drain filled with feces. He complained to jail staff that the room smelled "like shit" and asked for cleaning supplies, but they were never provided. In fact, the evidence suggested that the rubber room was never cleaned during the five days Sheppard was in the rubber room or the day and a half that Johnson stayed there.

## II.     Legal Discussion

### A.     *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.** *Plaintiffs have Failed to Show a Widespread Practice*

Plaintiffs bring this claim under *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658 (1978). Generally, 42 U.S.C. § 1983 prohibits a "person" acting under color of law from violating another's civil rights. The Supreme Court held in *Monell*, however, that Congress intended municipalities and local governments to be included in the definition of "persons" "where

. . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690. The *Monell* Court also held that a municipality could be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. But "[m]unicipal liability under *Monell* carries an important limitation: the statute does not incorporate the common-law doctrine of respondeat superior, so a municipality cannot be held liable for the constitutional torts of its employees and agents." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (citing *Monell*, 436 U.S. at 690-91). "[T]o prevail on a § 1983 claim under *Monell*, a plaintiff must challenge conduct that is properly attributable to the municipality itself." *Id*. (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997)). The Seventh Circuit has identified three types of actions that can support municipal liability under § 1983:

> (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quotation marks omitted).

A plaintiff asserting a *Monell* claim must prove that the policy or custom "demonstrates municipal fault." *Id*. (citing *Brown*, 520 U.S. at 404). *Monell* liability is "difficult to establish," requiring the plaintiffs to "prove that a municipality, either through an express policy or an implied policy of inaction, took 'deliberate' action that was the 'moving force' behind a constitutional injury." *Taylor v. Hughes*, 26 F.4th 419, 435 (7th Cir. 2022) (quoting *Brown*, 520 U.S. at 403-07). In a case like this one, where Plaintiffs have alleged that the municipality caused its employees to violate their rights, "a 'rigorous standard[] of culpability . . . applie[s] to ensure that the

4

municipality is not held liable solely for the actions of its employee.'" *LaPorta*, 988 F.3d at 986-87 (quoting *Brown*, 520 U.S. at 405).

> In this situation, the plaintiff must demonstrate that the municipality's action "was taken with 'deliberate indifference'" to the plaintiff's constitutional rights. *Brown*, 520 U.S. at 407. This is a high bar. Negligence or even gross negligence on the part of the municipality is not enough. *Id*. A plaintiff must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences. *Id*.
>
> Finally, a *Monell* plaintiff must prove that the municipality's action was the "moving force" behind the federal-rights violation. *Id*. at 404. Like the heightened showing of municipal fault, this rigorous causation standard guards against backsliding into respondeat superior liability. *Id*. at 405. To satisfy the standard, the plaintiff must show a "direct causal link" between the challenged municipal action and the violation of his constitutional rights. *Id*. at 404.
>
> These requirements—policy or custom, municipal fault, and "moving force" causation—must be scrupulously applied in every case alleging municipal liability.

*LaPorta*, 988 F.3d at 987.

Defendant moves for summary judgment on each of the *Monell* requirements, but the Court finds one dispositive: the lack of a widespread custom or practice. Plaintiffs do not allege that the conditions they faced in the rubber room resulted from an express policy or the actions of a final decisionmaker. Instead, they rely on their argument that the conditions result from a "widespread practice that is so permanent and well-settled that it constitutes a custom or practice." To survive summary judgment, then, Plaintiffs must put forward evidence showing that the conditions they faced or staff's response to those conditions was so widespread that they reflected a policy choice by Defendant. *Greiveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008).

The debate between the parties is whether Plaintiffs' experiences, which overlapped, are enough to carry their burden. It is true, as Plaintiffs argue, that "it is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience." *Id*. But proof of a policy or custom via idiosyncratic experience seems to be "not

5

impossible" just like cold fusion, teleportation, and perpetual motion machines are "not impossible," that is, possible, but mostly in a theoretical sense. Plaintiffs point to no cases in which a court has found a widespread custom or policy based on a single incident, and the cases the Court has found do not apply to the present facts. Short of a suicide caused by repeated failures of the mental health safety net, *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004), or admissions by the defendant that the practice is widespread, *Willis v. Williams*, Case No. 17-cv-3297, 2022 WL 4599260, at *14 (N.D. Ill. Sept. 30, 2022), more than the experience of one plaintiff, or one incident, is required.

Plaintiffs' case comes closer than most, but the Court cannot find, from the designated facts, that the sanitation problems faced by Plaintiffs were so widespread as to qualify as a custom or practice of Defendant. There are two Plaintiffs but, since their stays in the rubber room overlapped, there is only one incident before the Court. That weighs against the finding of a custom or practice.

Plaintiffs' best argument is that several jail officers were necessarily involved in the continuance of the unsanitary conditions in the rubber room, given Sheppard's extended stay. But courts have repeatedly rejected claims of a custom or practice even where an incident extended over multiple days and involved multiple alleged wrongdoers. *See, e.g.*, *Barrows v. Larry*, No. 16 C 7882, 2020 WL 1182658 (N.D. Ill. Mar. 12, 2020); *Crawford v. Dybas*, No. 16 C 04216, 2019 WL 1425445 (N.D. Ill. Mar. 29, 2019). The Court sees no reason to depart from the logic of those cases here.

Giving every reasonable inference to Plaintiffs, the conditions they were forced to live in were deplorable. They are even more so when one considers they were placed in the rubber room because of mental illness. But they were not widespread enough to constitute a custom or practice

6

of Defendant. Because Plaintiffs failed to designate evidence showing such a custom or practice, Defendant is entitled to summary judgment.

**III.     Conclusion**

For these reasons, Defendant's motion for summary judgment (ECF No. 33) is GRANTED. The Clerk is DIRECTED to enter judgment for Defendant and against Plaintiffs.

SO ORDERED on February 8, 2023.

                                             s/ *Holly A. Brady*
                                             JUDGE HOLLY A. BRADY
                                             UNITED STATES DISTRICT COURT